709 A.2d 1205

**Arthur R. PORTER**

v.

**BAYLINER MARINE CORPORATION et al.**

**No. 84, Sept. Term, 1996.**

Court of Appeals of Maryland.

May 18, 1998.

610

Daniel F. McMullen, Jr., Cumberland, for appellant.

Michael S. Levin (John R. Warthen, Dirska & Levin, on brief), Columbia, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and WILNER, JJ.

BELL, Chief Judge.

We granted certiorari in this case to address an issue not heretofore considered by Maryland courts, whether, when an

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

award by the Workers' Compensation Commission ("Commission") requiring periodic payments is satisfied by a single lump sum payment, without Commission approval, Maryland Code (1957, 1991 Repl.Vol.) § 9–736 of the Labor and Employment Article [1] bars the reopening of the claim giving rise to the award more than five years after the lump sum payment is made, and, thus, any modification of that award. The Commission determined that it did, and, on judicial review, the Circuit Court for Allegany County concurred. We shall reverse.

## I

The facts are largely undisputed. Arthur R. Porter (the "appellant") was employed by Bayliner Marine Corporation ("Bayliner"), a boat manufacturing facility. On March 13, 1988, he sustained an accidental injury when, while lifting a boat deck, he stepped on an air hose and twisted his right leg and back. Subsequently, the appellant filed a claim for workers' compensation benefits with the Commission. Eventually, after receiving temporary total disability benefits on two separate occasions, appellant, Bayliner, and its insurance carrier, National Union Fire Insurance of Pittsburgh ("the appellees"), entered into a stipulation in which it was agreed that the appellant had sustained an 11% permanent disability of the body as a whole. The Commission adopted the stipulation, and, in conformity with it, by order dated August 17, 1989, made an Award of Compensation, in which the appellees were ordered to pay the appellant permanent partial disability benefits of "11% under 'Other Cases' to the body as a whole at the rate of $80.00, payable weekly, beginning February 6, 1989 for a period of 55 weeks." The appellees were further ordered to pay, from the final weeks of compensation, the appellant's attorney's fee of $880.00 and $104.00 in reimburse-

---

1. The Maryland Workers' Compensation Act is codified at Md.Code (1991 Repl.Vol., 1996 Cum.Supp.) Title 9 of the Labor and Employment Article. Unless otherwise indicated, all statutory references hereinafter are to the Act.

ment of a medical bill. By check dated August 22, 1989, in the amount of $4,400.00,[2] and made payable to the appellant and his counsel, the appellees paid the full amount of the award in a lump sum. Neither the appellant nor the appellees sought or received authorization from the Commission for the payment of the award in that fashion.

Believing that his condition had not improved as expected and, indeed, had worsened, the appellant sought to reopen his claim by filing, on August 29, 1994, an "Issues" form, in which he alleged "worsening of condition—low back with pain radiating into both legs." This was more than five years after the lump sum payment of August 22, 1989, but less than five years from when the last periodic payment required by the Commission's August 17, 1989 order would have been paid.[3] The appellees responded by raising, among other issues, limitations. Following a hearing, the Commission, agreeing with the appellees, concluded that the appellant's claim to reopen was barred by limitations and, so, passed an order dismissing it.

The appellant filed, in the circuit court, a petition for judicial review of the Commission's decision. The appellees responded by filing a Motion for Summary Judgment, to which the appellant filed an opposition. In the motion and accompanying memorandum, the appellees once again argued that the appellant's request to reopen was barred by limitations. The court held a hearing, following which, on April 29, 1996, it signed an order granting the appellees' motion for summary judgment. This Court granted certiorari on its own motion before the appeal, filed by the appellant, was heard by the Court of Special Appeals.

---

2. Fifty-five weeks times $80.00 equals $4,400.00.

3. Fifty-five weeks from February 6, 1989 would have terminated on February 26, 1990. Deducting from the 55 weeks those necessary to pay the attorney's fees and the medical bill, a little more than 12 weeks ($984.00 ÷ $80.00 = 12.3) leaves 42.7 weeks, which would have expired on November 31st, 1989.

## II

Critical to the resolution of the issue before the Court is § 9–736(b)(3), it being crystalline that, subject to its limitation, the Commission has continuing power and jurisdiction to modify the findings and orders it makes in respect to each Workers' Compensation claim.[4]  That section provides:

"Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within five years after the last compensation payment."

The appellees assert that interpretation of this section is dispositive and, therefore, it is not necessary to consider any other provision of the Workers' Compensation Act.  They argue, as they did before the Commission and the circuit court, that if the words used in § 9–736(b)(3) are given their ordinary and natural meaning, the statute is clear and unambiguous and, thus, does not permit modification of a previous award more than five years after the last compensation payment, whether a periodic one or a lump sum, and whether authorized by the Commission or not.

The appellant disagrees.  He believes that it is important that payment of an award by a lump sum, as an option, is required by § 9–729 to be approved by the Commission.[5]  Pertaining to the conversion of periodic payments to a lump sum, that section provides, in pertinent part:

---

**4.**  Section 9–736(b)(2) provides:

"(b) Continuing powers and jurisdiction; modification—
   * * * *

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified."

**5.**  Section 9–730(b) addresses the same subject, but from the perspective of an insurer or self insurer.  It provides:

"(b) Conversion to lump sum.—Subject to the consent of the Commission, an insurer or self-insurer may convert an award of compensation for permanent partial disability, minus any attorney's fees, to a lump sum if the initial award did not exceed 51 weeks.
(c) Discount prohibited.—An award may not be discounted because of a lump-sum payment."

"(b) Conversion to lump sum.—If the Commission finds that a lump-sum payment is warranted under the facts and circumstances of a claim, the Commission may order that compensation payable to a covered employee or the dependents of a covered employee be converted to a partial or lump sum.

(c) Reduction of future payments.—If the Commission grants a lump-sum payment under this section in a claim involving permanent total disability or death, the Commission shall:

(1) reduce the weekly rate of compensation until the amount of the lump sum would have been paid if it had been paid in weekly payments; and

(2) determine in the award:

(i) the dollar amount and the number of weeks to be paid by the employer or its insurer at the reduced weekly rate. . . .

\* \* \* \*

(d) Discount prohibited.—An award may not be discounted because of a lump sum payment."

Moreover, the appellant finds the Commission's regulation on the subject, Code of Maryland Regulations, § 14.09.01.18, also to be relevant and material. Promulgated pursuant to § 9–309,[6] the regulation states:

"A. A claimant seeking a lump sum payment shall file an application with the Commission. The application shall state specifically the facts and circumstances that the claimant contends justify the lump sum payment and shall be accompanied by any documents upon which the claimant is relying to support the application.

B. The party who may be required to make the lump sum payment shall file with the Commission a statement showing the outstanding balance of payments due the claimant and

---

**6.** As relevant, section (a) permits the Commission to "adopt regulations to carry out this title."

indicating whether that party objects to the granting of application.

C.   A hearing on the application shall be scheduled only if an objection and a request for hearings are filed, or on the Commission's own initiative."

The appellant also points out that lump sum awards or payments are the exception, not the rule and, thus, while necessary in some cases, certainly are not favored.   He notes further that such awards are not made lightly or for other than important or necessary reasons.   Consequently, the appellant concludes that failure to obtain the approval of the Commission to convert an award of periodic payments to a lump sum renders any such payment a nullity with respect to the application of § 9–736(b)(3).   The thrust of the appellant's argument is that § 9–736(b)(3) must be read in light of, and reconciled with, § 9–729.   Though not stated explicitly, he seems to recognize that, § 9–736(b)(3) is clear and unambiguous only if viewed in isolation, without the benefit of § 9–729; however, when read together with § 9–729, it is quite ambiguous, it not being clear whether the last payment refers to an authorized payment, rather than an unauthorized one.

### III

In *B. Frank Joy Co. v. Isaac,* 333 Md. 628, 636 A.2d 1016 (1994), this Court reiterated what the Legislature declared loudly and clearly when it enacted, more than 80 years ago, what was to become the Workers' Compensation Act, its purpose, general aim and policy, what was sought to be achieved, and the evils to be addressed.   We said:

"In the preamble to the Act, the legislators recognized that industries necessary for the prosperity of the state involve 'injury to large numbers of workmen, resulting in their partial or total incapacity or death,' and that, under the legal system at the time, determining the responsibility of the employer meant 'great and unnecessary cost ... in litigation, which cost is borne by the workmen, the employers and the taxpayers....' Beyond that, 'the State and its

taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, in so far as may be consistent with the rights and obligations of the people of the State, be more fairly distributed....'

To alleviate the burden on both the citizens of Maryland and the workers and their families, the Act withdrew from private controversy all questions of fault in accidents arising in hazardous employment. To provide 'sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents,' the General Assembly created the State Industrial Accident Commission, which is now the Workers' Compensation Commission. The Legislature bestowed upon the Commission the exclusive administrative and supervisory authority over the Act. The Commission's duties, in the main, were to examine individual cases and decide whether to order employers to compensate injured employees, and, if so, in what amount, so as to fulfill the expressed policy, aims and objectives of the legislation."

*Id.* at 634–635, 636 A.2d at 1019–1020, quoting the Acts of 1914, ch. 800. We had earlier quoted, in another case, the statement contained in its Preamble of the purpose and goal of the Acts of 1914, Chapter 800:

"The Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries."

*Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 628, 569 A.2d 697 (1990). Moreover, the Act is to be construed as liberally as possible in order to comply with the legislative command, contained in § 9–102(a), that it be interpreted so as to "carry out its general purpose." *Isaac,* 333 Md. at 635, 636 A.2d at 1020. *See Mayor and City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–762 (1995); *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. at 629, 569 A.2d at 700. It is likewise well settled that the plain meaning of the Act

may not be disregarded in the name of liberal construction. *Cassidy,* 338 Md. at 97, 656 A.2d at 762.

Section 9–736(b)(3) is a part of the Workers' Compensation Act, as is § 9–729. When read by itself, the requirement in the former section tying the right to modification of prior orders and claims to the date of the last compensation payment is clear enough, even unambiguous; in a vacuum, the provision makes clear that any payment of compensation benefits, whatever the form or timing, will do. Section 9–736(b)(3) cannot be read in a vacuum, however. We pointed out in *Gardner v. State,* 344 Md. 642, 650, 689 A.2d 610, 614 (1997), that "Statutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear." *See also Board of County Comm'rs of Garrett County v. Bell,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997) ("When interpreting any statute, we must look to the entire statutory scheme, and not any one provision in isolation, to effect the statute's general policies and purposes"); *Sullins v. Allstate,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995) (a term which is unambiguous in one context may be ambiguous in another); *Geico v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993) (where the statute to be construed is a part of a statutory scheme, the legislative intention is determined by considering it in light of the statutory scheme); *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993) ("when we are called upon to interpret two statutes that involve the same subject matter, have a common purpose, and form part of the same system, we read them in pari materia and construe them harmoniously"); *State of Maryland v. Crescent Cities Jaycees,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732 (1986) ("That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled").

Section 9–729 must also be considered. By requiring Commission approval for the conversion of periodic payments to partial or total lump sum payments, it makes clear that the preferred method of paying awards is by periodic payment

rather than by lump sum. Indeed, that is what our courts have held. *See Bethlehem Steel Company v. Taylor,* 199 Md. 648, 651, 87 A.2d 844, 845 (1952); *Petillo v. Stein,* 184 Md. 644, 652, 42 A.2d 675, 678–679 (1945); *Rogers v. Welsh,* 113 Md. App. 142, 153–154, 686 A.2d 1107, 1112–1113 (1996); *Wright v. Philip Elecs. N. Am.,* 112 Md.App. 642, 650, 685 A.2d 1216, 1219 (1996); *C & R Contractors v. Wagner,* 93 Md.App. 801, 811, 614 A.2d 1035, 1040 (1992), *cert. denied,* 329 Md. 480, 620 A.2d 350 (1993). As we said in *Petillo:*

> "The policy of the statute does not favor lump sum awards. They are the exception rather than the rule. While necessary in some cases, they are not made of right. The Legislature wisely left the determination of when they should be made, and to what extent, in the discretion of the administrative body charged with special knowledge of the subject. This authority given to the Commission is safeguarded by ample opportunity for review by the courts. In cases where an appeal by the employer and the insurer is pending, the Commission should be careful to see that no damage is done to their fundamental rights by granting a request for a lump conversion."

*Id.* at 652–653, 42 A.2d at 679. And it is consistent with the purpose of the Act and the statutory scheme's focus on periodic payments. *See* Part IV of the Act, §§ 9–625 to 9–634.

When § 9–736(b)(3) is read in light of § 9–729, its interpretation, and the statutory scheme embodied in Part IV of the Act, it is no longer quite so clear. In fact, where the Commission has not approved the conversion to a lump sum payment, the meaning of the term, "last compensation payment" is quite unclear. Certainly, the phrase could refer to any payment of compensation, whether authorized pursuant to the statutory scheme or by the administrative body entrusted with its implementation and operation, or not. More likely, it was intended to be rather more narrow, to refer only to those payments authorized by the Commission as to amount, method of payment and duration. Computing limitations for purposes of § 9–736(c)(3) by reference to payments in a form not

authorized by the Commission does not further the purpose of the Legislature in enacting Workers' Compensation legislation. On the contrary, that approach actually has the opposite effect; it undermines the goal of that legislation because it increases the chances of the claimant becoming a public charge, and without any chance for the Commission to avoid that result. On the other hand, requiring the payments to be in conformity with the Commission's award ensures that the legislative intent underlying the Act is advanced; by giving effect to the oversight responsibility of the Commission, it insures, as much as possible, that the safeguards contemplated by the Act actually are realized. In addition, that approach avoids the likelihood that the time for reopening a previous award can be manipulated simply by by-passing the step of obtaining Commission approval for the conversion of periodic payments to lump sums.

This last point was one of the reasons offered by the Supreme Court of Appeals of West Virginia in reaching the result that we reach. In *Haney v. State Compensation Com'r et al.*, 138 W.Va. 303, 76 S.E.2d 753, that court held that the time within which a petition to reopen a Worker's Compensation claim may be filed under West Virginia Code 23–4–16,[7] that state's equivalent of § 9–736, was computed from the time that the last periodic payment would have been made, and not the date that the lump sum payment in that case was tendered. Significantly, the court opined:

"(a) holding to the contrary would, in cases where periodical payments are commuted, have the effect of shortening the period of time allowed the employee to reopen such a claim, (and) shorten the time in which the employer could present

---

7. Code 23–4–16 reads, in pertinent parts: "The power and jurisdiction of the commissioner over each case shall be continuing and he may from time to time, after due notice to the employer, make such modifications or changes with respect former findings or orders as may be justified: ... except within five years after payments for temporary disability shall have ceased or within one year after the commissioner shall have made the last payment in any permanent disability case...."

evidence as to (the employee's) complete or maximum recovery.... We think the Legislature intended no such result."
*Haney*, 76 S.E.2d at 755.

The appellees assert that *Adkins v. Weisner*, 238 Md. 411, 209 A.2d 255 (1965) supports their position and, in fact, is dispositive of the issue. In *Adkins*, the employee having sustained an accidental injury, with respect to which he had received an award of temporary total disability, the Commission passed, on August 24, 1959, a "supplemental award of compensation," ordering the employer and his insurer to pay the employee compensation for permanent partial disability at the rate of $ 25 per week, payable weekly, beginning on July 26, 1959, not to exceed the sum of $ 1875. *Id.* at 413, 209 A.2d at 255. Upon the employee's request, the Commission ordered, on September 28, 1959, that a lump sum amount be converted from the closing weeks of compensation due the employee and paid to him without discount. All payments due under the supplemental award had been paid as of April 20, 1960. More than three years later,[8] claiming a "worsening of condition," the employee filed a petition to reopen his case. In response, the employer and its insurer argued that the petition was not filed within the period of limitation and, therefore, was time-barred. Agreeing, the Commission denied the petition. That order was affirmed by the Circuit Court for Wicomico County. In this Court, the employee argued that if he had not requested a lump sum payment, his compensation would not have been fully paid until January 4, 1961, in which event, the petition for reopening would have been timely. We affirmed the judgment of the circuit court, explaining:

"In the case at bar, it is clear that the last payment due under the award was made on or before April 20, 1960. Section 40(c) by its terms is plain and unambiguous, and leaves no room for interpretation. We hold that the request of the employee on October 2, 1963, to re-open the case to permit the making of an additional award was denied be-

---

8. The period prescribed by the statute then in effect. *See* Code (1957), Art. 101 § 40(c).

cause the statutory period of limitations had expired.... Furthermore, a lump sum payment paid at the request of an employee must be considered in determining the date of final payment of compensation in tolling the period of limitations."

*Id.* at 414, 209 A.2d at 256(citation omitted).

*Adkins* is readily distinguishable from the case at bar. The Commission approved the lump sum conversion in *Adkins*, upon the employee's petition; neither a request nor approval occurred in this case. *Adkins*, thus, establishes only that the payment of an award by lump sum conversion,[9] approved by the Commission, must be considered when determining whether a request to reopen is barred by the statute of limitations. That, however, is not the issue that this case presents; rather, it is, in its simplest form, whether an unapproved lump sum conversion, followed by payment, must also be considered. We hold that it does not.

Other jurisdictions have reached similar results.[10] *Bingham v. Florida Chip Steak Co.*, 496 So.2d 950 (Fla.App.1986) (lump-

---

**9.** As we have already noted, lump-sum awards, which are the exception rather than the rule, are not favored. "The Commission's discretion to commute or convert awards of weekly compensation into lump-sum awards should be exercised only when necessary for the proper care or injured workers and their dependents.... They [lump sum awards] are not granted for purposes unrelated to the necessary living or business needs of claimant. [Lump sum payments] ... are intended to meet essential expenses...." *University of Maryland Medical Systems Corp. v. Erie Insurance Exchange*, 89 Md.App. 204, 214–215, 597 A.2d 1036, 1041 (1991). "The Court is especially cognizant that the two primary purposes of the statutory scheme for periodic payments are: (1) to provide for regular payments to replace the normal income the covered employee would have received had he/she not been injured; and(2) to avoid, by making payments periodically, the wasting of claimant's means of support in order to prevent the claimant from becoming a burden on society." *Rogers v. Welsh*, 113 Md.App. 142, 154–155, 686 A.2d 1107, 1112 *citing C & R Contractors*, 93 Md.App. 801, 822–823, 614 A.2d 1035, 1046.

**10.** Louisiana statutes not only mandate that lump sum conversions be approved, but provide for a monetary penalty for an employer who tenders an unapproved lump sum payment. La.Rev.Stat. Ann. Title 23,

sum settlement agreement between employer/carrier and claimant is not final and enforceable until or unless it has been approved by commissioner); *National Surety. Corp. v. Orvin,* 209 Ga. 878, 76 S.E.2d 705 (1953) (where agreement is made for payment of workers' compensation benefits in lump sum, agreement must be approved by board of Workmen's Compensation, otherwise agreement is void and is not binding upon parties); *International Coal and Mining Co. v. Industrial Commission et al.,* 293 Ill. 524, 127 N.E. 703 (1920) (It is contrary to the policy of the Workers' Compensation Act to allow an employer, while choosing to come under its provisions, to relieve itself from liability under the Act by private agreement or contract with the employee.); *Hartford Accident & Indemnity Co. v. Industrial Commission,* 320 Ill. 544, 151 N.E. 495, 496 (1926) (Parties may not, by agreement, deprive the Industrial Commission of jurisdiction.); *Zielinski v. General Motors Corp.,* 1 N.Y.2d 424, 153 N.Y.S.2d 642, 135 N.E.2d 808 (1956) (agreement between claimant and employer for lump sum nonscheduled adjustment could not become effective for any purpose or create any rights unless and until it was approved by Workmen's Compensation Board); *Frompovicz v. Workmen's Compensation Appeal Board,* 164 Pa.Cmwlth. 307, 642 A.2d 638 (1994) (Lump-sum settlements of workers' compensation disputes are generally null and void, if they are entered into without approval of Workmen's Compensation Appeal Board.); *Employers' Indem. Corp. v. Woods,* 230 S.W. 461 (Tex.Civ.App.—Beaumont 1921) (It was the intention of

Labor and Worker's Compensation, Ch. 10, § 1274 reads, in pertinent parts:

"B. If the lump sum settlement is made without the approval of the hearing officer, ... the employer shall be liable for compensation at one and one-half times the rate fixed by this chapter. At any time within two years after date of the payment of the lump sum settlement and notwithstanding any other provision of this Chapter, the claimant shall be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid, will aggregate one and one-half times the compensation which would have been due but for such lump sum settlement." *See Gauthier v. General Acc. Fire & Life Assur. Corp., Ltd.,* 573 So.2d 462 (La.1991).

the Legislature to provide for compensation in weekly payments with certain definite exceptions to be approved by the Industrial Accident Board, and to make void a contract by a beneficiary to commute his compensation to a lump sum without the board's approval.).

JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO FURTHER REMAND THE CASE TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COST TO BE PAID BY THE APPELLEES.