784 A.2d 569

**William B. BREITENBACH,**

v.

**N.B. HANDY COMPANY et al.**

**No. 28, Sept. Term, 2001.**

Court of Appeals of Maryland.

Nov. 8, 2001.

Robert G. Samet (Denise J. Gottron, Nicholas L. Phucas of Ashcraft & Gerel, LLP, Rockville, Tucker V. Claggett of Andrews, Schick, Bongar, Starkey & Woodside, Waldorf), all on brief, for appellant.

Kevin A. Clasing (Law Office of Nancy L. Harrison, Annapolis), on brief, for appellees.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

The question this case presents is whether a workers' compensation claimant, who has been injured in the course of employment and is receiving medical treatment pursuant to an award by the Maryland Workers' Compensation Commission (the "Commission"), is entitled to reimbursement for the cost of transportation to and from the treating health care provider. We shall answer that question in the affirmative.

William B. Breitenbach, the appellant, filed a workers' compensation claim that the N.B. Handy Company and American Manufacturers Mutual Insurance Company, the employer and insurer, respectively, and the appellees, did not contest, and the Commission passed an order granting the appellant benefits, including medical treatment. Subsequently, the appellant requested the appellees to reimburse him, at the rate of $.30 per mile, for the miles he traveled going to and from medical treatment. The request was denied, whereupon the appellant sought and received a hearing before the Commission.[1] The Commission ordered the appellees to reimburse the appellant for his mileage expenses.

The appellees filed a Petition for Judicial Review in the Circuit Court for St. Mary's County. Thereafter, the parties filed cross motions for summary judgment. Following a hearing, the Circuit Court granted the appellees' motion and denied the appellant's, thus, reversing the Commission's decision. Dissatisfied with that ruling, the appellant noted an appeal to the Court of Special Appeals. Prior to that court's consideration of the appeal, we granted certiorari on our own motion. As indicated, we believe that a workers' compensation claimant receiving medical treatment pursuant to an order of the Commission is entitled to be reimbursed the reasonable and necessary transportation expenses for travel to and from that medical treatment. Consequently, we shall

---

1. Instead of holding a hearing, the matter was submitted to the Commission, by agreement of the parties, on a mileage affidavit, with the understanding that the Commission would, after review, issue an order determining whether reimbursement was appropriate.

reverse the judgment of the Circuit Court for St. Mary's County.

This case involves statutory construction of the Workers' Compensation Act, Title 9 of the Labor and Employment Article, Maryland Code (1999 Repl.Vol., 2000 Cum. Supp.), thus, the principles that guide us have been stated on numerous occasions and are well settled. We recently reiterated those principles in *Philip Elecs. North America v. Wright,* 348 Md. 209, 212, 703 A.2d 150, 151 (1997), stating:

"As we have repeatedly emphasized, the Act is remedial in nature and " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995) (quoting *Howard Co. Ass'n Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980)); *see* § 9–102(a). Thus, in interpreting the Act, we do not apply the canon of construction that a statute in derogation of the common law should be strictly construed. § 9–102(b). Moreover, all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature. *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–67, 620 A.2d 340, 342 (1993); *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 537, 463 A.2d 850, 856 (1983). Of course, we seek to avoid an interpretation which would lead to an untenable or illogical outcome. *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997); *Waskiewicz v. General Motors Corp.,* 342 Md. 699, 708, 679 A.2d 1094, 1099 (1996); *see also Superior Builders, Inc. v. Brown,* 208 Md. 539, 543, 119 A.2d 376, 378 (1956) ("The Act should receive a practical construction, and should be so interpreted and construed as to effectuate its general purpose.").

In construing the Act, as in construing all statutes, the paramount objective is to ascertain and give effect to the intent of the legislature. *Marriott Employees v. Motor Vehicle Admin.,* 346 Md. 437, 444, 697 A.2d 455, 458 (1997); *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81, 83 (1996).

In interpreting the Act, we apply the following general principles. First, if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end. *Marriott Employees,* 346 Md. at 445, 697 A.2d at 458; *Frank v. Baltimore County,* 284 Md. 655, 661, 399 A.2d 250, 254 (1979); *see Polomski v. Baltimore,* 344 Md. 70, 75–76, 684 A.2d 1338, 1340 (1996). Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based. *DeBusk [v. Johns Hopkins Hosp.],* 342 Md. [432] at 437, 677 A.2d [73] at 75 [1996]. Last, applying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant. *Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995); *Lovellette v. Baltimore,* 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983). This Court, however, may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail. *Morris v. Bd. of Educ.,* 339 Md. 374, 384, 663 A.2d 578, 583 (1995). Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant. *R & T Constr. v. Judge,* 82 Md.App. 700, 709, 573 A.2d 96, 100 (1990), modified, 323 Md. 514, 594 A.2d 99 (1991)."

Of course, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Important to determining legislative intent, sought in the first instance in the actual language of the statute, *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 444–45, 697 A.2d, 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997)(quoting

*Tidewater/Havre de Grace, Inc. v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks,* 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Bd. of Supervisors v. Weiss,* 217 Md. 133, 136, 141 A.2d 734, 736 (1958), is the purpose of the statutory scheme of which the statute under review is a part. Here, that purpose was set out in the Preamble to Acts 1914, ch. 800, which enacted what is now the Workers' Compensation Act. We have stated that purpose as being "to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Howard County Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 531, 418 A.2d 1210 (1980), and "to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944). *See also Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 628–29, 569 A.2d 697, 699–700 (1990); *Unsatisfied Claim Bd. v. Salvo,* 231 Md. 262, 264, 189 A.2d 638, 639 (1963); *Egeberg v. Md. Steel Prods. Co.,* 190 Md. 374, 379, 58 A.2d 684, 685 (1948).

We have repeatedly emphasized the Act's remedial nature and that it "should be construed as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Howard County Ass'n Retard. Cit. v. Walls,* 288 Md. at 530, 418 A.2d at 1213. Thus, we also have said, in interpreting the Act, we do not apply the cannon of construction that a statute in derogation of the common law should be strictly construed. *Philip Elecs.,* 348 Md. at 216–17, 703 A.2d at 153–54. *See Porter v. Bayliner Marine Corp.,* 349 Md. 609, 616, 709 A.2d 1205, 1208 (1998); *B. Frank Joy Co. v. Isaac,* 333 Md. 628, 634–35, 636 A.2d 1016,

1019 (1994). Section 9–102, relating to the construction of the Act, is consistent, providing:

"(a) *In general.*—This title shall be construed to carry out its general purpose.

(b) *Rule for strict construction inapplicable.*—The rule that a statute in derogation of the common law is to be strictly construed does not apply to this title."

At issue in this case are the reasonable travel expenses necessary for the appellant to go back and forth to the providers of the medical treatment the Commission ordered the appellees to provide. Section 9–660(a), which pertains to medical services and treatment provided, prescribes:

"(a) in addition to the compensation provided under this subtitle, if a covered employee has suffered an accidental personal injury, compensable hernia, or occupational disease the employer or its insurer promptly shall provide to the covered employee, as the Commission may require:

(1) medical, surgical, or other attendance or treatment;

(2) hospital and nursing services;

(3) medicine;

(4) crutches and other apparatus; and

(5) artificial arms, feet, hands, and legs and other prosthetic appliances."

Thus, the specific issue is the scope of § 9–660(a)(1), the only category that arguably applies, whether, in other words, "medical, surgical, or other attendance or treatment" is sufficiently broad to encompass such expenses.

The Circuit Court, contrary to the ruling of the Commission, held the appellant was not entitled to be reimbursed for the expenses of traveling to and from the treatment that the Commission ordered. The court was persuaded by the absence in the Act, and thus in § 9–660, of an explicit requirement that mileage expenses, or their reimbursement, be provided by the employer and insurer in connection with the medical treatment for which the Act expressly makes them responsible. Rejecting the appellant's argument based on the

Commission's history of ordering such payments and observing that "it isn't an obscure statute, it plainly says, 'legs, arms and medical expenses,' it doesn't say, 'and other reasonably incurred expenses that logically flow from and are necessary and natural to make him totally whole,' because that is not the theory behind the Workers' Compensation Law, as opposed to tort law," the court concluded that "the [L]egislature would [have], if it believed mileage should be an item, lunch, any other reasonably incurred expenses going to and from doctors, they would have said so."

The appellees agree. They add that so interpreting the Act is consistent with requiring a worker to pay for his or her travel to and from work, pointing out, "[w]hen working, an employee is required to pay for his own transportation, generally speaking, so when he is out of work as the result of an accident, it is not unreasonable to ask him to pay the costs for his transportation to health care providers." According to the appellees, "[t]his new activity essentially replaces the costs of travel to and from employment."

Moreover, the appellees offer evidence that the Legislature knows how to provide for the payment of transportation expenses as a benefit in a particular circumstance: § 9–674 [2]

---

**2.** Maryland Code (1999 Repl.Vol., 2000 Cum.Supp.) § 9–674 of the Labor and Employment Article provides:

"(a) The employer or its insurer shall pay the expenses of the vocational assessment and vocational rehabilitation services of a covered employee.

(b) (1) While a covered employee is receiving vocational rehabilitation services, the employer or its insurer shall pay compensation to the covered employee as if the covered employee was temporarily totally disabled.

(2) if a covered employee refuses to accept vocational rehabilitation services in accordance with an order of the Commission and the Commission determines the refusal to be unreasonable, payments under paragraph (1) of this subsection are forfeited for the period of refusal.

(c) (1) if a covered employee is required to live away from home in the course of receiving vocational rehabilitation services, the employer or its insurer shall pay to the covered employee money that:

(i) is sufficient to maintain the covered employee while the covered employee receives vocational rehabilitation services; but

applicable to vocational rehabilitation. They point out that this section specifically provides that a worker receiving vocational rehabilitation benefits is entitled, under certain circumstances, to reimbursement for mileage expenses for traveling to and from rehabilitation counselors and vendors. "In fact," they assert, "section [§ 9–674(a) ] provides that employers are to generally pay the "expenses" of any vocational rehabilitation assessment or services.... That statement and that requirement are altogether absent in the section concerning medical benefits." To the appellees, contrasting § 9–660 with § 9–674 leads inexorably to the conclusion that the former does not include transportation expenses:

> "There is nothing inherent in the nature of requiring an insurer to pay medical benefits that mileage is necessarily included. It would make more sense that the Legislature would have put it in both sections had it meant that benefit to be included in both situations."

Not unexpectedly, the appellant sees the matter quite differently. To him, the purpose of the Workers' Compensation Act and the holding of *R & T Const. Co. v. Judge*, 323 Md. 514, 531, 594 A.2d 99, 108 (1991), which he characterizes as requiring van transportation of a quadriplegic to his physician's office for treatment, together "clearly suggest that Maryland would adhere to the strong national majority view among states to the effect that reasonable transportation costs are covered under the workers' compensation law, even when the statute speaks of nothing more than medical and hospital treatment."

---

(ii) does not exceed $40 a week.

(2) The employer or insurer shall make payments for maintenance under paragraph (1) of this subsection in addition to the payment of compensation under subsection (b) of this section.

(d) (1) Except as provided in paragraph (2) of this subsection, a covered employee who resides at home during vocational rehabilitation training is not entitled to reimbursement of transportation costs to and from the place of vocational training.

(2) in unusual cases the Commission may allow reasonable transportation costs.

(e) For the purposes of this section, vocational rehabilitation training may not last for more than 24 months."

Like the appellees, the appellant relies on § 9–674 to support his position. Agreeing with the appellees that subsection (a) of that section generally requires the employer to pay the expenses incurred in vocational rehabilitation, he notes, however, that the subsection does not specifically mention transportation expenses. Indeed, the appellant points out that such costs are specifically mentioned only in subsection (d) and then to deny reimbursement for transportation expenses to an employee who is residing at home while receiving vocational training services, thus generally exempting the employer from reimbursing such employees, but allowing reimbursement, in fact placing on the employer the obligation to pay such expenses, in "unusual cases." This means, the appellant concludes,

> "The very inclusion of a provision disallowing transportation expenses in the case of vocational rehabilitation benefits carries with it the negative implication that the Legislature assumed transportation expenses would be covered in other contexts of workers' compensation, including medical transportation."

The appellant's interpretation of § 9–660 as including transportation expenses in connection with medical treatment is buttressed, he argues, by the fact that § 9–674(d) refers only to training, although vocational rehabilitation services involve more than simply training. Noting the definition of "vocational rehabilitation services" in § 9–670(e),[3] while reiterating that

---

3. Section 9–670(e) provides:
   "(e)(1) 'Vocational rehabilitation services' means professional services reasonably necessary during or after or both during and after medical treatment to enable a disabled covered employee, as soon as practical, to secure suitable gainful employment.
   (2) 'Vocational rehabilitation services' includes:
   (i) coordination of medical services;
   (ii) vocational assessment;
   (iii) vocational evaluation;
   (iv) vocational counseling;
   (v) vocational rehabilitation plan development;
   (vi) vocational rehabilitation plan monitoring;
   (vii) vocational rehabilitation training;
   (viii) job development; and

vocational rehabilitation training is only one of the nine services listed and emphasizing that coordination of medical services is among them, and reminding us that the employer, pursuant to § 9–674(a), is responsible for the payment of "the expenses of the vocational assessment and vocational rehabilitation services of a covered employee," the appellant argues:

> "In only one of these distinct services, 'vocational rehabilitation *training*,' (emphasis supplied) is payment of transportation costs exempted. It stands to reason that by singling out training as the only vocational rehabilitation service for which transportation expenses are not covered, employers and insurers are required to pay for transportation expenses during the other eight distinct services, including the coordination of medical services. By singling out this one service for exclusion of transportation, a fair inference can be drawn that the Legislature assumed the employer and insurer had a duty to pay for transportation expenses elsewhere in the vocational rehabilitation statute and elsewhere in the Act."

Critical to the appellees' position, as the trial court held, is the supposition that the Legislature intentionally neglected to mention transportation costs in connection with medical services in § 9–660 and that, by this omission, the Legislature clearly and unambiguously expressed the intention not to require the employer and insurer to pay such costs or expenses. Stated another way, if § 9–660 is clear and unambiguous in excluding from the employer and insurer's responsibility the costs of transportation in connection with medical care, there is no occasion to construe it. The search for the Legislature's intention elsewhere is unnecessary; there is no need for the liberal construction applicable to the interpretation of the Workers' Compensation Act. This is so because "the plain meaning of the Act may not be disregarded in the name of liberal construction." *Porter v. Bayliner Marine Corp.*, 349 Md. at 616–17, 709 A.2d at 1208 (1998), citing *Cassidy*, 338 Md. at 97, 656 A.2d at 762.

---

(ix) job placement."

On the other hand, if § 9–660 is ambiguous, if the mere fact of the omission of a reference to transportation costs does not clearly and ambiguously express the Legislature's intention with regard to the employer and insurer's liability for the payment of such costs in connection with medical treatment, then the rule of liberal construction applies; it must be interpreted so as to comply with the legislative command, contained in § 9–102(a), to "carry out [the] general purpose" of the Act. *Isaac,* 333 Md. at 635, 636 A.2d at 1020. *See also Cassidy,* 338 Md. at 97, 656 A.2d at 761–62; *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. at 629, 569 A.2d at 700.

It may well be that, when viewed alone, in isolation or a vacuum, § 9–660 is clear and unambiguous, that the omission of an express provision requiring the employer and insurer to pay transportation expenses in connection with medical treatment and the failure of the statute to mention such expenses is indication enough that the Legislature did not intend those expenses to be covered. But § 9–660 cannot be read in a vacuum. *Porter v. Bayliner Marine Corp.,* 349 Md. at 617, 709 A.2d at 1209–1210. In *GEICO v. Ins. Comm'r,* 332 Md. 124, 132–33, 630 A.2d 713, 717–18 (1993), we instructed:

> "Where the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. *State v. Crescent Cities Jaycees Found.,* 330 Md. 460, 468, 624 A.2d 955, 959. When, in that scheme, two statutes, enacted at different times and not referring to each other, *Farmers & Merchs. Bank v. Schlossberg,* 306 Md. 48, 56, 507 A.2d 172, 176 (1986); *Mgmt. Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984), address the same subject, they must be read together, *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9, 12 (1990), i.e., interpreted with reference to one another, *Schlossberg,* 306 Md. at 61, 507 A.2d at 178; *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985), and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. *Balto.*

*Gas & Elec. v. Public Serv. Comm'n,* 305 Md. at 157, 501 A.2d at 1313. Neither statute should be read, however, so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory. *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Kindley v. Governor of Md.,* 289 Md. 620, 625, 426 A.2d 908, 912 (1981); *Moberly v. Herboldsheimer,* 276 Md. 211, 217, 345 A.2d 855, 858 (1975)."

*See also Bd. of County Comm'rs of Garrett County v. Bell,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997) ("When interpreting any statute, we must look to the entire statutory scheme, and not any one provision in isolation, to effect the statute's general policies and purposes"); *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993) ("when we are called upon to interpret two statutes that involve the same subject matter, have a common purpose, and form part of the same system, we read them in pari materia and construe them harmoniously"); *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187 (1980).

Moreover, "[s]tatutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear." *Gardner v. State,* 344 Md. 642, 650, 689 A.2d 610, 614 (1997). *See Sullins v. Allstate,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995) (a term which is unambiguous in one context may be ambiguous in another); *State of Maryland v. Crescent Cities Jaycees,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732 (1986) ("That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled.").

Section 9–674 is a part, as we have seen, of the Workers' Compensation Act and, therefore, it, too, is relevant in the search for the meaning and scope of § 9–660. Indeed, although reaching different conclusions, both the appellant and the appellees rely on it. While the appellees view its

significance as lying in the fact that the Legislature addressed the transportation expenses issue in enacting § 9–674, and did not do so when enacting § 9–660, thus leading it to conclude that the latter placed no obligation on the employer and insurer for such expenses, the appellant views the scope of the reference to those expenses in § 9–674 as more important and, therefore, decisive. To him, it is telling that the prescription against reimbursement for transportation expenses applies to only one aspect of the vocational services and, consequently, "carries with it a negative implication that the Legislature assumed transportation expenses would be covered in other contexts of workers' compensation, including medical transportation."

The appellant is correct. It is a reasonable interpretation of § 9–674 to place an obligation on employers and insurers to pay for the transportation expenses of all claimants receiving vocational rehabilitation services except, in unusual circumstances, those receiving vocational rehabilitation training. Because the latter were exempted out as a result of an express provision and there is no express provision imposing the obligation on the employers and insurers in the other circumstances, it follows that the entitlement to such expenses existed, and continues to exist, without an explicit or express direction from the Legislature, and that it is inherent in the regulatory scheme. If such an obligation exists without express legislative direction with regard to vocational rehabilitation services, it is just as likely, indeed more so, to be an obligation in connection with medical care. After all, as the appellant points out, and § 9–660(b) [4] requires, it is the purpose of the Act, and that section in particular, to provide medical care as, and for the duration, necessary.

---

4. Section 9–660(b) provides:

"(b) The employer or its insurer shall provide the medical services and treatment required under subsection (a) of this section for the period required by the nature of the accidental personal injury, compensable hernia, or occupational disease."

Moreover, one receiving medical treatment ordinarily is in the same or, at least, in no better position, to afford to pay the transportation expenses than a claimant receiving vocational rehabilitation services. In neither case is the claimant receiving the full amount of his or her wages for the period during which he or she is receiving medical treatment or vocational rehabilitation services. To be eligible to receive vocational rehabilitation services, a claimant must be disabled, *see* § 9–672, or "unable as the result of an accidental personal injury or an occupational disease to perform work for which [he or she] was previously qualified." *See* § 9–670(b). "While a covered employee is receiving vocational rehabilitation services, the employer or its insurer shall pay compensation to the covered employee as if the covered employee was temporarily totally disabled." *See* § 9–674(b)(1). Similarly, an employee who has suffered an accidental personal injury is entitled to have provided by the employer or insurer "medical, surgical, or other attendance or treatment," in addition to the compensation prescribed. As in the case of an employee receiving vocational rehabilitation services, such treatment may include that applicable to temporary total disabilities, *see* § 9–621,[5] but may also include those applicable to temporary partial disabilities, *see* § 9–615,[6] and permanent partial, *see*

---

**5.** Section 9–621, as relevant, provides:

"(a) Amount of payment.-
(1) Except as provided in paragraph (2) of this subsection, if a covered employee is temporarily totally disabled due to an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but:
(i) does not exceed the average weekly wage of the State; and
(ii) is not less than $50.
(2) If the average weekly wage of the covered employee is less than $50 at the time of the accidental personal injury or the last injurious exposure to the hazards of the occupational disease, the employer or its insurer shall pay the covered employee compensation that equals the average weekly wage of the covered employee."

**6.** Section 9–615(a) provides:

"(a) Amount of payment.-

§§ 9–625–9–635, and total, *see* § 9–637,[7] disabilities. In any case, the amount of the benefits do not equal the amount of the employee's wages.

We conclude, under the circumstances, that § 9–660 is not clear and unambiguous on the question of the employer and insurer's obligation to reimburse an employee receiving medical treatment for the cost of travel back and forth to the medical treatment provider; rather, it is, at best, unclear. The uncertainty, given the remedial nature of the Act and of this section, in particular, applying the rule of liberal construction, is resolved in favor the appellant. *Philip Elecs.*, 348 Md. at 216–17, 703 A.2d at 153–54.

This interpretation is consistent with the interpretation given the Act by the Commission. As the appellant argues, and the Circuit Court acknowledged at trial, the Commission historically has interpreted the Act as requiring the employer and insure to pay a covered employee for his or her mileage. Indeed, although the Commission has not adopted formal

(1) Subject to paragraph (2) of this subsection, if the wage earning capacity of a covered employee is less while temporarily partially disabled, the employer or its insurer shall pay the covered employee compensation that equals 50% of the difference between:
(i) the average weekly wage of the covered employee;  and
(ii) the wage earning capacity of the covered employee in the same or other employment while temporarily partially disabled.
(2) The compensation payable under paragraph (1) of this subsection may not exceed 50% of the State average weekly wage."

7.  Section 9–637(a) provides:
"(a) Amount of payment.-
(1) Except as provided in paragraph (2) of this subsection, if a covered employee has a permanent total disability resulting from an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but may not:
(i) exceed the State average weekly wage;  or
(ii) be less than $25.
(2) If the average weekly wage of the covered employee is less than $25 at the time of the accidental personal injury or last injurious exposure to the hazards of the occupational disease, the employer or its insurer shall pay the covered employee weekly compensation that equals the average weekly wage of the covered employee."

regulations on the subject, its Chairman issues the Commission's annual "Comp Grams," which set forth the per mile reimbursement rate used by practitioners and insurers.

To be sure, the issue of statutory interpretation is for the court to decide, nevertheless, we have recognized that even when such matters are before the court, "the agency's interpretation may be entitled to some deference." *Total Audio–Visual Systems, Inc. v. Dept. of Labor, Licensing and Reg.,* 360 Md. 387, 394, 758 A.2d 124, 128 (2000); *Office of People's Counsel v. Maryland Public Service Comm'n,* 355 Md. 1, 14, 733 A.2d 996, 1003 (1999) ("questions of law ... are 'completely subject to review by the courts,' ... although the agency's interpretation of a statute may be entitled to some deference.") (quoting *Cambridge v. Eastern Shore Public Serv. Co.,* 192 Md. 333, 339, 64 A.2d 151, 154 (1949)), citing *Mayor & Council of Crisfield v. Public Serv. Comm'n,* 183 Md. 179, 189, 36 A.2d 705, 710 (1944) and *Baltimore Gas and Elec. Co. v. Dep't of Health and Mental Hygiene,* 284 Md. 216, 395 A.2d 1174 (1979); *Bd. of Physician v. Banks,* 354 Md. 59, 729 A.2d 376 (1999) ("Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.").

And the construction we give § 9–660 is consistent with *R & T Constr. Co. v. Judge, supra,* cited by both the appellant and the appellees. There, considering a quadriplegic's workers' compensation claim for a specially-equipped van, additional remodeling and enlargement of his residence, and the cost of the electricity required to power certain appliances used by him, 323 Md. at 516, 594 A.2d at 101, the Court construed Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 37(a), which, except for form, is largely identical to its successor, § 9–660(a).[8] Although we rejected the home modifications

---

**8.** Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 37(a) provides:

specifically sought by the claimant,[9] applying the rule of liberal construction, we held that § 37(a) generally "includes within the concept of medical treatment reasonable modifications to a claimant's home that allow necessary access for claimants confined to wheelchairs as a result of their compensable injuries." *Id.* at 530, 594 A.2d at 107. We relied on *A.G. Crunkleton Elec. Co. v. Barkdoll,* 227 Md. 364, 177 A.2d 252 (1962), in which, despite the fact that "nurse . . . services" appeared in the enumeration with "medical, surgical . . . and hospital," thus indicating an intention to only provide for professional nursing services, the Court liberally construed the term to include services rendered to the claimant at home by his wife, who was not a professional nurse. *Id.* at 529, 594 A.2d at 107. The Court also cited *Schauder v. Brager,* 303 Md. 140, 142, 492 A.2d 630, 631(1985) ("legal services" include "physicians and others who evaluate a claimant in preparation for trial and who appear for a claimant at trial," for purposes of statute allowing the Commission to set a fee for such services). In so doing, the Court characterized the employer's argument that *ejusdem generis* prevents construing § 37(a) to include any home modifications as "a narrow one."

---

"Employer to provide medical, etc., treatment and services.—In addition to the compensation provided for herein the employer shall promptly provide for an injured employee, for such period as the nature of the injury may require, such medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches, apparatus, artificial hands, arms, feet and legs and other prosthetic appliances as may be required by the Commission. . . ."

9. The Court stated that "in the area of modifications to a residence, the concept of medical treatment under § 37(a) must be limited to access for necessities." *Judge,* 323 Md. at 531, 594 A.2d at 108. It is not enough that the additional modifications involve the improvement of the quality of life for one in the claimant's situation. *Id.* at 530, 594, 594 A.2d 99. The Court pointed out that even when the modifications were made, the claimant would still need a full time attendant, thus, "the alterations proposed here would not make the residence suitable for the disabled person to be relatively self-sufficient, insofar as necessities are concerned." *Id.* The court applied the same rationale to the claimant's request for a specially-equipped van, which the Court determined was not, as the Court of Special Appeals had decided, *see* 82 Md.App. 700, 709, 573 A.2d 96, 100, a "prosthetic appliance." *Id.* at 531, 594 A.2d at 108.

Significantly, the *Judge* court upheld the claimant's entitle-ment to "the cost of the electricity to operate reasonably necessary medical equipment and apparatus," finding, as did the trial court, that § 37(a) includes such costs. *Id.* at 521, 594 A.2d at 103. In addition, noting the evidence supporting the claimant's lack of bodily temperature controls, *id.*, the Court opined, "[o]n this record the Commission could find that the air conditioning is medical treatment." *Id.* at 522, 594 at 103. In short, as it is admonished to do, the Court interpreted the statute broadly to give effect to its benevolent purposes.

Most of the courts of our sister states that have similar statutes and have considered the issue agree. *See Sam's Club and Claims Mgmt., Inc. v. Bair,* 678 So.2d 902, 903–04 (Fla. Dist.Ct.App.1996); [10] *C & L Constr. v. Cannon,* 884 S.W.2d 647, 648 (Ky.1994); [11] *Simpson v. Glen Aubrey Fire Co.,* 86

---

**10.** The applicable statute, Fla. Stat. § 440.13 (2000), required the employer to furnish the claimant with "remedial treatment, care, and attendance" for as long as the injury required. *Bair,* 678 So.2d at 903. The court interpreted this language to include the costs of transporta-tion for medical treatment, as had been held by the Supreme Court of Florida 32 years earlier, *see Mobley v. Jack & Son Plumbing,* 170 So.2d 41 (Fla.1964), despite the Legislature having subsequently amended the statute first to insert that requirement and then to strike it. *Bair,* 678 So.2d at 903.

**11.** The applicable Kentucky statute, Ky.Rev.Stat. Ann. § 342.020 (2001), provided, as relevant:

"The employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, or as may be required for the cure and treatment of an occupational disease."

Finding the statute to be ambiguous and, thus in need of interpretation and, as interpreted, holding that it included transportation costs for medical treatment, the court reasoned:

"Surely, 'cure and [/or] relief' is the end which the General Assembly aims to achieve; 'treatment' is a means. But whether the primary mandate of section .020 is that the employer shall 'pay for the cure and relief' of the injury, or on the other hand that it shall 'pay for . . . treatment,' etc., neither predicate excludes payment for reasonable expenses incident to realizing the end or employing the means. One entitled to be treated is entitled to attend the treatment. We believe the General Assembly intended 'cure, 'relief,' and 'medical treatment'

A.D.2d 909, 448 N.Y.S.2d 261, 261–62 (1982);[12] *Ney v. State Workmen's Comp. Comm'r*, 171 W.Va. 13, 297 S.E.2d 212, 215 (1982).[13] In each case, the court applied the rule of liberal construction to achieve the benevolent purposes of that State's worker's compensation statute. *Bair*, 678 So.2d at 903–04; *Cannon*, 884 S.W.2d at 648; *Simpson*, 448 N.Y.S.2d at 261; *Ney*, 297 S.E.2d at 215.

The appellees rely on *Martinez v. Indus. Comm'n*, 175 Ariz. 319, 856 P.2d 1197 (App.1993) and *Helen Mining Co. v. Workmen's Comp. Appeal Bd.*, 151 Pa.Cmwlth. 242, 616 A.2d 759 (1992), arguing that their analyses are "exactly the same approach taken by the Court of Appeals in *Judge*." We do not agree that the *Judge* approach is the approach taken in either case. In the former, pursuant to A.R.S. § 23–1021(A)(1983), any covered employee suffering an industrial injury was "...

---

to include their necessary concomitants, including, in this case, travel."

**12.** As reported in *Simpson*, 448 N.Y.S.2d at 261–62, "[s]ubdivision (a) of section 13 of the Workers' Compensation Law provides in pertinent part that the employer is obligated to provide an injured employee with such medical, surgical or other attendance or treatment as the nature of the injury or the process for recovery may require."

**13.** The applicable statute, W. Va.Code, 23–4–3, § 3 (2001), provided:
"The commissioner shall disburse and pay from the fund for such personal injuries to such employees as may be entitled thereto hereunder as follows:
(a) Such sums for medicines, medical, surgical, dental and hospital treatment, crutches, artificial limbs and such other and additional approved mechanical appliances and devices, as may be reasonably required.
(b) Payment for such medicine, medical, surgical, dental and hospital treatment, crutches, artificial limbs and such other and additional approved mechanical appliances and devices authorized under subdivision (a) hereof may be made to the injured employee, or to the person, firm or corporation who or which has rendered such treatment or furnished any of the items specified above, or who has advanced payment for the same, as the commissioner may deem proper, but no such payments or disbursements shall be made or awarded by him unless duly verified statements on forms prescribed by the commissioner shall be filed with the commissioner within two years after the cessation of such treatment or the delivery of such appliances...."

entitled to receive and shall be paid such compensation for loss sustained on account of the injury or death, such medical, nurse, and hospital services and medicines . . . as are provided by this chapter." and A.R.S. § 23–1062(A) (1983), the other statute under review, provided: "medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of disability. Such benefits shall be termed "medical, surgical and hospital benefits." The court held that the statutes "are clear and do not provide for the payment of travel expenses incurred while obtaining industrially related medical treatment. Because the statutory language is unambiguous, there is no reason for statutory interpretation." 856 P.2d at 1200. We simply do not find the *Martinez* case to be persuasive.

Moreover, *Helen Mining* is distinguishable from this case. As that case makes clear the Pennsylvania statute was construed not to include "ordinary" transportation costs for medical treatment because the Legislature which had once included such costs in the statute subsequently amended the statute to delete them. *See* 616 A.2d at 761–62. Furthermore, the Pennsylvania courts still interpret "reasonable" in the provision of the Workers' Compensation Act requiring "[t]he employer [to] provide payment for reasonable surgical and medical services . . . medicines, and supplies, as and when needed . . ." to include travel expenses incurred for long distance travel, if necessary to obtain medical care. *Id.* at 762.

JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION. COSTS TO BE PAID BY THE APPELLEES.