921 A.2d 235

Frederick GREEN

v.

CARR LOWERY GLASS COMPANY, INC., et al.

No. 104, Sept. Term, 2006.

Court of Appeals of Maryland.

April 13, 2007.

David E. Fink, Baltimore, for petitioner.

Joan P. Adelman, Towson, for respondents.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and WILNER, ALAN, M., (Retired, specially assigned), JJ.

RAKER, J.

We are called upon in this case to interpret certain provisions of the Workers' Compensation Act, Maryland Code (1999, 2006 Cum.Supp.), § 9–101 *et seq.* of the Labor and Employment Article.[1] We must decide whether a claimant whose hearing has been damaged within the frequencies established in § 9–505 as a result of his occupation is entitled to have hearing aids provided by his employer/insurer, even though he does not meet the criteria for monetary compensation under § 9–650. We shall hold that petitioner is not eligible for medical benefits, *i.e.* hearing aids, under § 9–660 unless he is eligible for compensation under § 9–505 and § 9–650.

Petitioner, Frederick Green, was employed by the Carr Lowery Glass Company for over thirty years as a mold shop worker. On August 3, 2004, he filed a claim with the Workers' Compensation Commission (hereinafter "Commission"), alleging that "years of exposure to loud glass machine[s] caused loss of hearing." Dr. Brian Kaplan, a physician affiliated with Ear, Nose & Throat Associates in Baltimore, evaluated petitioner's hearing on October 19, 2004.[2] Dr. Kaplan's evaluation stated as follows:

---

**1.** All subsequent statutory references herein shall be to the Labor & Employment Article, Md.Code (1999, 2006 Cum.Supp.), unless otherwise indicated.

**2.** Petitioner selected Dr. Kaplan to perform the evaluation. The parties do not dispute Dr. Kaplan's medical conclusions regarding petitioner's condition.

"Mr. Green does have a mild to severe high frequency sensorineural hearing loss. His Maryland Compensation Formula for hearing loss is zero percent. However, this pattern of hearing loss is consistent with that caused by significant environmental noise exposure. This noise exposure and hearing loss is likely also the cause of the factors for his bilateral tinnitus. He is a good hearing aid candidate given the degree of loss and discrimination scores. The cost of hearing aids is $5,125.00. I have recommended good hearing protection in the future when in loud environments and will plan on seeing him back on an as needed basis."

According to Dr. Kaplan's audiogram, petitioner suffered some hearing loss in the range of frequencies between 2000 and 3000 hertz.

The Commission held a hearing on January 28, 2005 to determine whether petitioner sustained an occupational disease arising out of and in the course of employment, and whether petitioner was entitled to hearing aids, as recommended by Dr. Kaplan. By written order, on February 10, 2005, the Commission denied petitioner's claim, finding that petitioner "did not sustain an occupational disease of binaural hearing loss arising out and in the course of employment as alleged to have occurred on February 25, 2003, and ... that the [hearing aids] issue is moot."

Green filed a petition for judicial review, and both parties moved for summary judgment. On May 27, 2005, after hearing arguments by the parties, the Circuit Court for Baltimore City issued an oral opinion. The court concluded, "it is required that the claimant meet the standard of § 9–650 before being entitled to medical benefits." By written order on May 31, 2005, the court granted summary judgment in favor of the employer/insurer, denied petitioner's motion for summary judgment, and affirmed the decision of the Commission.

Green filed a timely appeal with the Court of Special Appeals. The Court of Special Appeals reviewed the contest-

ed statutory provisions, § 9–505 and § 9–650, and concluded that an inquiry of the legislative history was unnecessary because the statutory language is sufficiently clear. *Green v. Carr,* 170 Md.App. 502, 514, 907 A.2d 845, 851 (2006). The intermediate appellate court noted also that the language of § 9–505 is "much too broad to function independently and serve as the sole basis for compensation, medical expenses, or otherwise." *Id.* at 517, 907 A.2d at 853. Instead, the court held that § 9–505 establishes that occupational deafness due to industrial noise in certain frequencies is a compensable condition, and that one who suffers occupational deafness is entitled to compensation and benefits if he or she also meets the requirements in § 9–650. *Id.* at 518–19, 907 A.2d at 854.

This Court granted Green's petition for writ of certiorari to address the following question:

> "Is a Claimant whose hearing has been damaged as a result of his occupation and who meets the criteria for benefits under Labor & Employment Article § 9–505 entitled to have hearing aids provided by the Employer/Insurer, despite the fact that he does not meet the criteria for monetary compensation under Labor & Employment Article § 9–650?"

*Green v. Lowery,* 396 Md. 12, 912 A.2d 648 (2006).

The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. *Cochran v. Norkunas,* 398 Md. 1, 919 A.2d 700 (2007). In reviewing a grant of summary judgment under Md. Rule 2–501, we independently review the record to determine whether the parties properly generated a genuine dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(f); *see Hill v. Knapp,* 396 Md. 700, 711, 914 A.2d 1193, 1199 (2007). In the case *sub judice,* there is no genuine dispute of material fact.

We first recount briefly the history and statutory framework of Maryland's Workers' Compensation Act, as related to hearing loss in particular. Workers' compensation encom-

passes two main categories of compensable events: accidental personal injury and occupational diseases. §§ 9–501, 9–502; *Means v. Baltimore County,* 344 Md. 661, 664, 689 A.2d 1238, 1239 (1997); *see also Yox v. Tru–Rol,* 380 Md. 326, 330–36, 844 A.2d 1151, 1153–57 (2004) (providing a detailed history of Maryland's Workers' Compensation Act). Today, an employee's hearing loss may fall into either category, depending on whether the employee experienced a sudden traumatic event or was exposed repeatedly to loud noises. *See Yox,* 380 Md. at 332, 844 A.2d at 1154. This was not always the case, however.

As first enacted in 1914, the Workers' Compensation Act provided compensation only for accidental injuries that arose out of and in the course of employment, and an employee was not required to show that his or her disability resulted in a loss of wages or earning capacity. *Yox,* 380 Md. at 330–31, 844 A.2d at 1153–54. Thus, an employee who suffered the total loss of hearing in both ears due to a one-time accident that created a loud blast, for example, would have received compensation. *See Belschner v. Anchor Post,* 227 Md. 89, 92, 175 A.2d 419, 420–21 (1961). Compensation for hearing loss as an occupational disease, however, was not provided until 1951. *See Yox,* 380 Md. at 332, 844 A.2d at 1154. At that time, claims for occupational disease related to hearing loss were not compensable unless the employee showed that he or she was no longer able to work in the occupation that produced the disability. *See Belschner,* 227 Md. at 92–93, 175 A.2d at 422; *Yox,* 380 Md. at 333–33, 844 A.2d at 1154–55.

In 1967, the Legislature amended the Workers' Compensation Act to create a separate provision dealing specifically with occupational disease hearing loss. *Yox,* 380 Md. at 333–34, 844 A.2d at 1155. The new provision, § 25A of Article 101, provided that "occupational deafness shall be compensated according to the terms and conditions of this section" and set forth a testing methodology for determining eligibility for compensation. 1967 Md. Laws, Chap. 155; *Crawley v. General Motors Corp.,* 70 Md.App. 100, 104, 519 A.2d 1348, 1350, *cert. denied,* 310 Md. 147, 528 A.2d 473 (1987). The new provision stated that only hearing losses in the range of 500,

1000, and 2000 cycles per second were compensable, and provided that, "[i]f the losses of hearing average 15 decibels or less in the three frequencies, such losses of hearing shall not then constitute any compensable hearing disability." 1967 Md. Laws, Chap. 155; *Crawley,* 70 Md.App. at 104, 519 A.2d at 1350; *see also Yox,* 380 Md. at 334, 844 A.2d at 1155–56 (summarizing compensability criteria). We have recognized that the intent of the Legislature in enacting the new provision was "not only to provide technical criteria for measuring occupational loss of hearing but also to make such loss compensable without regard to inability to work or loss of wages." *Yox,* 380 Md. at 335, 844 A.2d at 1156 (quoting *Crawley v. General Motors Corp.,* 70 Md.App. 100, 107, 519 A.2d 1348, 1352 (1987)). Thus, we held that the statute provided that an employee may be eligible for occupational disease compensation due to work-related hearing loss without a showing of disablement, *i.e.,* loss of wages or inability to perform regular work. *Yox,* 380 Md. at 335, 844 A.2d at 1156; *Crawley,* 70 Md.App. at 101, 519 A.2d at 1349.

As part of the Legislature's general code revision process in 1991, the Workers' Compensation Act, Art. 101, was repealed and recodified as Title 9 of the Labor and Employment Article. *Yox,* 380 Md. at 335, 844 A.2d at 1156. The new statute split the former provisions regarding occupational hearing loss between subtitle 5, dealing with the entitlement to and liability for compensation, and subtitle 6, dealing with benefits. §§ 9–501 *et seq.; Yox,* 380 Md. at 335, 844 A.2d at 1156. It is the 1991 codification of the statute that is at issue in this case.

Our focus is primarily on three sections of the Workers' Compensation Act, located in two of the subtitles of Title 9: § 9–505, which defines occupational deafness; § 9–650, which sets forth the criteria for calculating the percentage of hearing loss; and § 9–660, which provides for medical benefits. For clarity, we set forth the full text of these sections below. As additional context, we include also all of the text in Part VII of Subtitle 6, entitled "Occupational Deafness."

Subtitle 5, "Entitlement to and Liability for Compensation," contains Section 9–505, entitled "Occupational deafness." Section 9–505 states as follows:

"(a) In general.—Except as otherwise provided, an employer shall provide compensation in accordance with this title to a covered employee for loss of hearing by the covered employee due to industrial noise in the frequencies of 500, 1,000, 2,000, and 3,000 hertz.

"(b) Short-term employer.—An employer is not liable for compensation for occupational deafness under subsection (a) of this section unless the covered employee claiming benefits worked for the employer in employment that exposed the covered employee to harmful noise for at least 90 days."

Subtitle 6 of Title 9 is entitled "Benefits" and consists of several Parts. Part I addresses general provisions, for example, while Part VII concerns occupational deafness and Part IX provides for medical benefits. Part VII starts with § 9–649, entitled "Scope of part." Section 9–649 states as follows:

"A covered employee who suffers from occupational deafness shall be paid compensation in accordance with this Part VII of this subtitle."

Section 9–650, entitled "Calculation of percentage of hearing loss," provides:

"(a) Measurement instruments.—(1) Hearing loss shall be measured by audiometric instrumentation that meets the following criteria: (i) ANSI 3.6–1996; (ii) ANSI S3.43–1992; and (iii) ANSI 3.39–1987 or any ANSI standard that supersedes the previous calibration or measurement criteria. (2) Measurements shall be conducted in a sound room that meets the ANSI 3.1–1991 criteria for maximum permissible ambient noise for audiometric test rooms. (3) Behavioral psychoacoustic measurements shall be obtained with instrumentation that utilizes insert earphones, as referenced in ANSI 3.6–1996.(4) Electrodiagnostic measurements such as auditory evoked potentials, acoustic emittance measurements, or distortion product otoacoustic emissions may be obtained to determine the nature and extent of workplace

hearing loss. (5) Audiologic results shall be used in conjunction with other information to evaluate a claimant's compensable hearing loss.

"(b) Calculation—Average thresholds of hearing.—(1) The percentage of hearing loss for purposes of compensation for occupational deafness shall be determined by calculating the average, in decibels, of the thresholds of hearing for the frequencies of 500, 1,000, 2,000, and 3,000 hertz in accordance with paragraph (2) of this subsection. (2) The average of the thresholds in hearing shall be calculated by: (i) adding together the lowest measured losses in each of the 4 frequencies; and (ii) dividing the total by 4.(3) To allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age, there shall be deducted from the total average decibel loss determined under paragraphs (1) and (2) of this subsection one-half of a decibel for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise.

"(c)(1) If the average hearing loss in the 4 frequencies determined under subsection (b) of this section is 25 decibels or less, the covered employee does not have a compensable hearing loss. (2) If the average hearing loss in the 4 frequencies determined under subsection (b) of this section is 91.7 decibels or more, the covered employee has a 100% compensable hearing loss. (3) For every decibel that the average hearing loss exceeds 25 decibels, the covered employee shall be allowed 1.5% of the compensable hearing loss, up to a maximum of 100% compensable hearing loss at 91.7 decibels.

"(d) Binaural percentage of hearing loss.—The binaural percentage of hearing loss shall be determined by: (1) multiplying the percentage of hearing loss in the better ear by 5; (2) adding that product to the percentage of hearing loss in the poorer ear; and (3) dividing that sum by 6.

"(e) Amplification device; bone conduction thresholds.—(1) In determining the percentage of hearing loss under this section, consideration may not be given to whether the use of an amplification device improves the ability of a covered

employee to understand speech or enhance behavioral hearing thresholds. (2)(i) In determining a workers' compensation claim for noise-related hearing loss, audiologic data shall use both bone conduction and air conduction results. (ii) If a conductive loss is present, the bone conduction thresholds for each ear, rather than the air conduction levels, shall be used to calculate a claimant's average hearing loss."

Section 9–651, entitled "Extent of Liability," states as follows:

"(a) In general.—Except as provided in subsection (b) of this section, an employer is liable for the full extent of the occupational deafness of a covered employee if: (1) the employment of the covered employee by the employer has contributed to any extent to the occupational deafness of the covered employee; and (2) the employer otherwise is liable under this section and § 9–505 of this title.

"(b) Limitation on liability.—An employer is liable only for the part of the deafness attributable to the employment by the employer if the employer establishes by competent evidence, including the results of a professionally controlled hearing test, the extent of the deafness of the covered employee that existed before exposure to harmful noise in the employment of the employer."

Finally, § 9–660, located in Part IX "Medical Benefits" of Subtitle 6 and entitled "Provision of medical services and treatment," states as follows:

"(a) In general.—In addition to the compensation provided under this subtitle, if a covered employee has suffered an accidental personal injury, compensable hernia, or occupational disease the employer or its insurer promptly shall provide to the covered employee, as the Commission may require: (1) medical, surgical, or other attendance or treatment; (2) hospital and nursing services; (3) medicine; (4) crutches and other apparatus; and (5) artificial arms, feet, hands, and legs and other prosthetic appliances.

"(b) Duration.—The employer or its insurer shall provide the medical services and treatment required under subsec-

tion (a) of this section for the period required by the nature of the accidental personal injury, compensable hernia, or occupational disease.

"(c) Award or order—Not to reopen case or change previous award.—Except as provided in § 9–736(b) and (c) of this title, any award or order of the Commission under this section may not be construed to: (1) reopen any case; or (2) allow any previous award to be changed."

As we have often stated, the cardinal rule of statutory interpretation is to ascertain and to effectuate the intent of the Legislature. *Department of Human Resources v. Howard,* 397 Md. 353, 918 A.2d 441 (2007). In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. *Id.* The ordinary and popular understanding of the English language dictates interpretation of terminology within legislation. *See Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004).

If a statute has more than one reasonable interpretation, it is ambiguous. *See Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1114 (2005). Ambiguous or equivocal statutory language requires us to consider not only the ordinary meaning of words, but also to interpret how that language relates to the overall meaning, setting, and purpose of an act. *See Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006). We resolve any ambiguity in light of the legislative history, prior case law, and statutory purpose. *Department of Health and Mental Hygiene v. Kelly,* 397 Md. 399, 918 A.2d 470, 481 (2007). We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense. *See Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005); *Moore,* 388 Md. at 453, 879 A.2d at 1115. We presume also that the Legislature has acted with full knowledge of prior legislation, and we construe the statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage,

superfluous, meaningless, or nugatory. *Oakland,* 392 Md. at 316, 896 A.2d at 1045.

Before this Court, petitioner argues that the Court of Special Appeals erred by holding that a claimant with work-related hearing loss is not entitled to a hearing aid under § 9–505 solely because he is not also eligible for monetary benefits under § 9–650. Petitioner concedes that he is not eligible for monetary benefits under § 9–650, but he argues that provision of medical benefits is a separate analysis to that of monetary compensation because § 9–660 says, "in addition to the compensation provided under this subtitle" and compensation is defined as only monetary compensation. Petitioner further asserts that § 9–505 establishes liability for "occupational deafness" even where the level of injury does not rise to the threshold for monetary benefits under § 9–650. Thus, petitioner asserts that he is entitled to reasonable medical expenses under § 9–660 because he suffered a hearing loss within the ranges set forth in § 9–505.

Respondent replies that petitioner does not become eligible for *any* type of workers' compensation benefits unless the claim is deemed compensable under both § 9–505 and § 9–650. Respondent argues further that § 9–505 and § 9–650 are complementary parts of the same test for determining benefits in occupational deafness cases, and that § 9–505, standing alone, does not create an entitlement to benefits.

Our analysis begins with § 9–505. Section 9–505(a) starts with the words "in general" and is located in a subtitle that establishes the main categories of injuries that are compensable under the Workers' Compensation Act.[3] Section 9–505(a) states that, *"[e]xcept as otherwise provided,* an employer shall provide *compensation in accordance with this title* to a covered employee for loss of hearing ... due to industrial noise in the frequencies of 500, 1,000, 2,000, and 3,000 hertz." § 9–505(a) (emphasis added). Section 9–505(b) requires that an

---

**3.** The categories include accidental personal injury, occupational disease, hernia, and occupational deafness. §§ 9–501—9–505.

employee claiming benefits have worked for the employer and been exposed to loud noises for at least 90 days. § 9–505(b). This general language in § 9–505 establishes minimal requirements for an occupational deafness claim. The section establishes certain frequencies where a loss of hearing may, in accordance with Title 9, constitute occupational deafness. Section 9–505 also acknowledges that occupational deafness is an occupational disease, regardless of a person's inability to work or loss of wages. *See Yox,* 380 Md. at 335–36, 844 A.2d at 1156–57 (reiterating that the 1967 amendments to the Workers' Compensation Act were intended to make occupational hearing loss, as distinguished from other occupational diseases, compensable without regard to disablement).

Section 9–505 sets forth only general requirements for making an occupational deafness claim. The language of § 9–505 does not provide any specific criteria for determining the extent of an employee's hearing loss. Nor does § 9–505 detail how to calculate a worker's entitlement to occupational deafness related compensation.[4] Moreover, nothing in the language of § 9–505 explicitly states that an employer shall provide medical benefits to covered employees with hearing loss in the named frequencies. Instead, the language of § 9–505 relies on qualifying language, *"[e]xcept as otherwise provided,* an employer shall provide *compensation in accordance*

---

**4.** Petitioner argues that medical expenses are excluded from the definition of "compensation" as it is used in § 9–505. Although the term "compensation" is defined in § 9–101(e) as "the money payable under this title to a covered employee or the dependents of a covered employee," including funeral benefits, we have previously acknowledged that compensation may have a broader meaning that includes medical benefits. *See Holy Cross Hosp. v. Nichols,* 290 Md. 149, 160, 428 A.2d 447, 452–53 (1981) (noting that compensation for which the Uninsured Employers' Fund was responsible included medical benefits, but holding that a "compensation award" which sought to be changed or modified does not include a request for medical benefits); *cf. Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 467–68, 620 A.2d 340, 343 (1993) (stating that definition of compensation in § 9–101(e) is broad and encompasses most forms of payment to employees provided under the statute, but it excludes the payment of medical expenses). Regardless of the definition of "compensation" as it is used in § 9–505, our holding is the same.

*with this title,"* to direct the reader to additional details. § 9–505(a). The word "title" refers to the entire Act, which includes subtitle 6, where sections on calculation of percent hearing loss, § 9–650, and medical benefits, § 9–660 are set forth. Because of the qualifying language and the general language used in § 9–505, we do not read § 9–505 to *independently* establish employer liability for compensation or medical benefits if a covered employee suffers hearing loss in the identified frequencies. An employee must also qualify for compensation and benefits under § 9–650 and § 9–660.

Section 9–650, entitled "Calculation of percentage of hearing loss," provides precise testing procedures for determining the extent of a worker's hearing loss. The threshold of hearing loss that must be met in § 9–650 is calibrated such that any hearing loss experienced due to aging is deducted from the overall calculation of loss. § 9–650(b)(3). Moreover, § 9–650 states that a covered employee does not have a compensable hearing loss if the average hearing loss in the four frequency ranges is 25 decibels or less. § 9–650(c)(1). In requiring an average hearing loss of more than 25 decibels, the Legislature determined that a certain threshold of loss be met in order to warrant compensation. *See Yox,* 380 Md. at 328, 844 A.2d at 1152. As we stated in *Yox:*

> "We shall hold that *an occupational deafness disablement occurs when the hearing loss is sufficient to become compensable under § 9–650.* A claim for workers' compensation benefits based on occupational deafness must therefore be filed within two years from the time the hearing loss *reaches that level of compensability* and the employee has actual knowledge that the loss was caused by his/her employment."

*Id.* (emphasis added). The criteria in § 9–650 presumably establish a threshold that is lower than whatever level of hearing loss constitutes "disablement," because occupational hearing loss was meant to be compensable without regard to "disablement." *See Yox,* 380 Md. at 335–36, 844 A.2d at 1156–57. We note, however, that the Legislature did not set a threshold such that *any* hearing loss attributed to work is

compensated—an individual must have an average loss of more than 25 decibels in the named frequencies. § 9–650(c)(1).

The Court of Special Appeals correctly noted that § 9–505 does not establish criteria to calculate hearing loss. Judge J. Frederick Sharer, writing for the panel, recognized that § 9–505 lacks any accounting for age-related hearing loss. Judge Sharer stated as follows:

"Were [§ 9–505] to be the whole of the test, nearly every employee of a certain age, at every task, will have suffered a compensable disablement. It is a fact that the human aging process is accompanied by some degree of hearing loss in a substantial percentage of the population. To accept [petitioner's] reasoning, our holding would entitle nearly every worker in an industrial setting to compensation in the nature of medical expenses, including hearing aids, even in the absence of a § 9–650 calculation of occupational hearing loss. Under that scenario, the § 9–650(b)(3) provision, providing for deduction for 'the average amount of hearing loss from nonoccupational causes to be found in the population at any given age' would be rendered meaningless."

*Green,* 170 Md.App. at 517, 907 A.2d at 853. We agree. Section 9–650 provides the technical criteria for measuring occupation hearing loss, and § 9–505 lacks such criteria because it references what is already established in § 9–650. The two sections are complementary, and a covered employee must comply with both to be eligible for benefits.

Petitioner concedes that he is not eligible for compensation under § 9–650, but argues that he is entitled to a hearing aid under § 9–660, "Provision of medical services and treatment." We do not find support for petitioner's assertion. Section 9–660 governs the provision of medical benefits for all forms of workers' compensation claims. Section § 9–660 begins with the words "in general" and then states "[i]n addition to the compensation provided under this subtitle, *if* a covered employee has suffered an accidental personal injury, compensable hernia, or *occupational disease* the employer or its insurer promptly shall provide" medical treatment and services. § 9–

660(a) (emphasis added). Subsection (b) also requires the employer or its insurer to provide the medical treatment and services "for the period required by the nature of the accidental personal injury, compensable hernia, or occupational disease." § 9–660(b).

The language of § 9–660 makes provision of medical benefits contingent, through the use of the word "if," on the employee actually suffering an occupational disease, compensable hernia, or accidental injury. As noted above, we have held that an occupational deafness claim, as an occupational disease, occurs when the hearing loss is sufficient to become compensable under § 9–650. *Yox*, 380 Md. at 328, 844 A.2d at 1152. Because petitioner concedes that he is not eligible for compensation under § 9–650 and therefore concedes also that he is not suffering an occupational deafness disease, we hold that he is not eligible for medical benefits under § 9–660.

Petitioner's assertion that § 9–505 establishes liability to provide medical benefits for occupational deafness even where the level of injury does not rise to the threshold for monetary benefits under § 9–650 fails. There is no evidence in the language of the statute that two separate thresholds—one for compensation and one for medical benefits—exist. The provision of medical benefits under § 9–660 is a separate consideration to that of monetary compensation, but the analysis of hearing loss related medical benefits *relies on* the calculation of percent hearing loss in § 9–650. Medical services and treatment are to be provided *in addition to compensation if* a covered employee has suffered an occupational disease, and the only way to determine if the employee may make an occupational deafness claim is to follow the methodology set forth in § 9–650. *See Yox*, 380 Md. at 328, 844 A.2d at 1152. The language in § 9–505 stating that "loss of hearing by the covered employee due to industrial noise in the [specified] frequencies" does not establish liability for medical benefits because it is general and lacks specific criteria.

Petitioner asserts that § 9–651 provides further evidence that § 9–505 was intended to have a meaning independent

from § 9–650. We disagree. Petitioner relies on language in § 9–651 stating that an employer is liable if, amongst other things, "the employer otherwise is liable under this section and § 9–505 of this title." § 9–651(a)(2). Petitioner suggests that, because § 9–651 does not specifically refer to § 9–650, satisfaction of § 9–650 is not required to establish a claim for medical benefits under § 9–660 if the employee meets the criteria set forth in § 9–505. Petitioner makes no new argument by relying on the language of § 9–651. Even though § 9–651 does not explicitly refer to § 9–650, § 9–505 references § 9–650 by requiring that compensation be provided "in accordance with this title." § 9–505(a). The language of § 9–651 does not support petitioner's assertion that § 9–505 establishes an independent ground for medical benefits, nor does § 9–505 establish an independent ground.

Considering the statute as a whole, it is inconsistent that the calculation of compensation in accordance with § 9–650 would include specific audiometric instrumentation methodology while provision of medical benefits under § 9–660 would not rely on similarly detailed requirements. As the Court of Special Appeals noted, calculation of hearing loss, especially considering the need to account for age-related hearing loss, is complicated and "the statute is, by necessity, complex." *Green,* 170 Md.App. at 517, 907 A.2d at 853. The Legislature intended to "set forth a technical set of criteria for when occupational deafness would be compensable." *Yox,* 380 Md. at 334, 844 A.2d at 1155. Section 9–505 is important in the statutory scheme because it sets forth the general criteria for entitlement and liability as a result of work-related hearing loss, and because it references other sections in Title 9. Based on the language and structure of the Workers' Compensation Act, we hold that a covered employee is entitled to medical benefits under § 9–660 for occupational deafness only if the hearing loss is compensable under both § 9–505 and § 9–650.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*